IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICIA SCOTT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRED BEANS CHEVROLET | : | |
| OF LIMERICK, INC., et al. | : | NO. 15-1071 |

MEMORANDUM

Dalzell, J.                                                                                                     April 28, 2016

## I.     Introduction

We consider here cross-motions for summary judgment filed by plaintiff Alicia Scott and defendants Fred Beans Chevrolet of Limerick, Inc. ("Beans") and Timothy E. DeJesus.  Scott brings claims against the defendants for violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, the Uniform Commercial Code ("U.C.C."), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. § 201-1 et seq., as well as a state law claim for conversion.  Defendant Beans asserts a counterclaim against Scott for breach of contract.  We have federal question jurisdiction over plaintiff's federal claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the parties' state law claims pursuant to 28 U.S.C. § 1367.

For the reasons set forth below, we will deny plaintiff's motion for summary judgment as to her ECOA and U.C.C. claims, but grant the motion as to Beans's breach of contract counterclaim.  We will grant defendants' motion for summary judgment on Scott's ECOA, UTPCPL, and conversion claims.

**II.      Factual and Procedural History**

On January 24, 2014, Alicia Scott and Beans executed a Retail Installment Contract ("RISC") for Scott's purchase of a 2007 Chevrolet Malibu.  Pl.'s Statement of Facts ("S.F.") at ¶ 1, Pl.'s Mot. at Ex. 1.  Beans was the sole entity that negotiated the terms of the RISC with Scott.  Id.  The RISC stated that Beans was immediately assigning the security interest of the RISC to Credit Acceptance Corporation ("CAC"), and that Scott agreed to, among other things, provide Beans with documents that Beans could "reasonably request to perfect [its] security interest."  Pl.'s Mot. at Ex. 1.  While Beans assigned the RISC to CAC, it was Beans that approved Scott's credit application for the purchase of the vehicle.  S.F. at ¶ 4.

On March 25, 2014, CAC notified Beans that it was reassigning the RISC back to Beans and that Scott should make her payments directly to Beans.  Id. at ¶ 10.  CAC reassigned the loan back to Beans because it had determined that Scott's residence and checking account were insufficiently documented.  Id. at ¶ 13.  CAC sent a letter to Scott informing her that it had reassigned the loan back to Beans and that she should now make her payments directly to Beans instead of to them.  Id. at ¶ 11.  Scott, however, never received this letter since she had moved and failed to provide Beans or CAC with her new mailing address.  Scott Dep. at 36-37.

In July of 2014, Tim DeJesus, then the Director of Financial Relations for Beans, emailed Scott requesting that she provide the documents necessary to create a new RISC which would be assigned to CAC.  Pl.'s Mot. at Ex. 6.  The terms of the new RISC were to have been identical to the terms of the RISC Scott signed in February of 2014.  Defs.' Mot. at Ex. F.  DeJesus also informed Scott that her other options were to return the vehicle to Beans or face legal action.  Pl.'s Mot. at Ex. 6.  Scott agreed to send the documents to DeJesus, and the two continued a friendly email conversation over the next three weeks.  Id.  DeJesus emailed Scott on no less

than four different occasions in an attempt to obtain the documents necessary to assign the new RISC to CAC.  Id.  Scott on one occasion did send DeJesus copies of her pay stubs, but the picture of the stubs was not clear.  Id.  On July 30, 2014, Scott informed DeJesus and Beans that she had moved and provided her new address.  Id. at Ex. 7.

During this time, Scott had stopped making payments on the car.  In fact, she did not make payments on the vehicle in May, June, July, August, September, or October of 2014.  Scott Dep. at 33-34.  Even though Beans was still trying to assign the RISC back to CAC, it testified, through one of its corporate designees, that it would have continued the loan and allowed Scott to maintain possession of the vehicle as long as she made her monthly payments.  Gilbert Dep. at 23.  In August, Beans and DeJesus sent Scott a letter, through its counsel, informing her that she was delinquent on her payments for the car and demanding that she bring her payments up to date.  Defs.' Mot. at Ex. I.  But this letter was sent to Scott's previous address, even though Scott had in late July provided Beans with her new mailing address.  S.F. at ¶ 27.

In November of 2014, Scott's grandmother, Robin Muffley, received a series of messages from Beans stating that Scott was driving her vehicle "without a lien" and that the vehicle was "stolen," and that Scott should "turn herself in."  Id. at ¶ 32.  Tim DeJesus also called both Scott and her grandmother seeking possession of the vehicle.  Scott Dep. at 88-91.  Scott told DeJesus that he could come and get the vehicle sometime that month.  Id. at 93.  The vehicle was repossessed shortly thereafter, S.F. at ¶ 33, and Beans sold the vehicle at auction in December of 2014.  Id. at ¶ 34.  After selling the vehicle at auction, Beans never sent Scott a notice of sale or deficiency.  Id. at ¶ 36.

Scott initiated this action on March 3, 2015, and the case was assigned to the Honorable Ronald L. Buckwalter.  After discovery, the parties filed their cross-motions for summary

judgment in October of 2015. This case was reassigned to us on January 22, 2016 after Judge Buckwalter's retirement.

**III.     Legal Standard**

Parties may move for summary judgment pursuant to Fed. R. Civ. P. 56(a) on any claim or defense in the case, and the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the moving party meets this initial burden, Fed. R. Civ. P. 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that there are genuine factual issues for trial. Id. at 324.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence is insufficient). Material facts are those that would affect the outcome of the case under the governing law. Id. at 248. We may not make credibility determinations or weigh the evidence, and we must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001). Our function is to determine whether there is a genuine issue for trial, and we may not

4

prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999).

We treat cross-motions for summary judgment as if they were distinct, independent motions, and must rule on each party's motion on an individual and separate basis. Beneficial Mut. Sav. Bank v. Stewart Title Guar. Co., 36 F. Supp. 3d 537, 544 (E.D. Pa. 2014) (citing Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008)). In evaluating each motion, we must consider the evidence in the light most favorable to the non-moving party. Trinity Industries, Inc. v. Chicago Bridge & Iron Co., 735 F.3d 131, 134-35 (3d Cir. 2013).

## IV. Discussion

We will consider the parties' cross-motions for summary judgment separately and in turn.

### A. Plaintiff Alicia Scott's Motion for Summary Judgment

Alicia Scott moves for summary judgment on her ECOA and U.C.C. claims and on Beans's counterclaim for breach of contract. We will grant in part and deny in part plaintiff's motion.

#### 1. ECOA Claim

Scott moves for summary judgment on her ECOA claim. The ECOA requires a creditor to provide notice to an applicant when the creditor takes an "adverse action" against the applicant. 15 U.S.C. § 1691(d)(1). This notice must provide an explanation for the creditor's "adverse action." Id. at § 1691(d)(2). Thus, in order to sustain her claim Scott must show that (1) Beans is a creditor as defined by the ECOA, (2) Beans took an adverse action against Scott, and (3) Beans provided notice with insufficient explanation as to why it took the adverse action.

The ECOA defines a creditor as "any person who regularly extends, renews, or continues credit… [or] any person who regularly arranges for the extension, renewal, or continuation of credit." Id. at § 1691a(e).  Courts applying the ECOA to car dealers have mused that "[w]hether a car dealer is a creditor is a fact specific question," and have taken into consideration whether the dealer (1) sets the terms of credit, (2) negotiates with the customer as to payment terms, (3) receives proceeds from the interest, and (4) is the first to assess the customer's credit application.  Barnette v. Brook Rd., Inc., 457 F. Supp. 2d 647, 654 (E.D. Va. 2006) (citing Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971, 980 (7th Cir. 2004)).  Here, Beans negotiated with Scott on the payment terms and set the terms of credit.  It was the first entity to review Scott's credit application and, after making an initial determination that Scott was eligible for financing, Beans extended credit to Scott for the purchase of a vehicle.  The record makes clear that Beans is a creditor under the ECOA.

We must next determine whether Beans took an "adverse action" against Scott.  The ECOA defines an adverse action as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."  15 U.S.C. § 1691(d)(6).

Courts throughout the country have wrestled with the question of whether a car dealer's actions constitute taking an "adverse action" against an applicant.  In Treadway, the car dealership unilaterally decided not to send an applicant's credit application to any lenders -- which "effectively denied credit" to that applicant.  362 F.3d at 975.  There, the Seventh Circuit reasoned that when a car dealership reviews an applicant's credit report, determines that she is not creditworthy, decides not to proceed further in arranging credit, and, as a result, the applicant is denied credit, the dealership has taken an adverse action against the applicant as defined by the

6

ECOA.  Id. at 976.  In contrast, the court in Barnette found that the car dealership had not taken an "adverse action" against an applicant when it shopped the plaintiff's credit application to several lenders without success.  457 F. Supp. 2d at 656.  The court concluded that "the ECOA limits adverse action to decisions on a customer's credit... [and] does not extend…to subsequent actions."  Id. (internal quotations omitted).

The case before us more closely resembles Barnette than Treadway, as Beans was simply trying to obtain the necessary documentation from Scott in order to assign the contract to a separate lender.  Beans and Scott entered into the RISC, which was then assigned to CAC.  The RISC stated that Scott was to make monthly payments of $350.65 and provide Beans with any documents it requested to perfect its security interest.  CAC reviewed the documents Scott provided to Beans and determined that they were not adequate enough for CAC to maintain the assignment.  After CAC reassigned the contract back to Beans, defendant Timothy DeJesus contacted Scott on behalf of Beans and requested additional documentation so Beans could create a new RISC with the exact same terms so that Beans could then reassign it to CAC.  Even while it was attempting to reassign the contract to CAC, Beans continued to honor the terms of the transaction by allowing Scott to keep the car as long as she made her monthly payments.  When Beans did repossess the car, it was because Scott failed to make her monthly payments, not because she was denied credit.

Scott makes the novel argument that Beans's conduct amounted to a de facto revocation of the RISC since she was never told explicitly that she could make her car payments in order to avoid having the car repossessed.  Scott cites, and we have found, no authority to support this position.  In the absence of legal authority, Scott relies on DeJesus's emails to her, which gave her the options of providing the further documentation required for assignment, returning the

vehicle, or facing legal action. Scott says that these emails revoked the RISC because they did not give her the option of making her missed car payments. But Beans did send a letter requesting payment to Scott's old address. Moreover, the RISC mandated that Scott provide all documentation necessary for Beans to perfect its security interest. The actions of Beans and DeJesus show that the defendants were attempting to honor the terms of the original RISC Scott signed, not change or revoke it. Thus, we find that the actions of Beans and DeJesus do not constitute an adverse action under the ECOA and will therefore deny Scott's motion for summary judgment as to her ECOA claim.[1]

### 2. U.C.C. Claim

Scott next moves for summary judgment on her U.C.C. claim. Pennsylvania law requires creditors to notify debtors before disposing of collateral after the debtor's default on a debt. 13 Pa. C.S.A. § 9611. A debtor may seek damages against creditors who fail to provide this notice under 13 Pa. C.S.A § 9625. The Pennsylvania Superior Court has held that the remedies set forth in § 9625 are compensatory in nature, and thus damages must be linked to the plaintiff's injuries. See Cubler v. Trumark Financial Credit Union, 83 A.9d 235, 241 (Pa. Super. Ct. 2013).

There is no dispute that Scott did not receive notice from Beans before it sold the car at auction in December of 2014. But Pennsylvania law makes clear that the question of whether Scott suffered a compensable injury and, if so, the extent of that injury, is for a jury to decide. See, e.g., Davis v. Mullen, 773 A.2d 764, 768 (Pa. 2001); Majczyk v. Oesch, 789 A.2d 717, 726 (Pa. Super. Ct. 2001); Alexander v. Benson, 812 A.2d 785, 7888 (Pa. Commw. Ct. 2002). We will therefore deny Scott's motion for summary judgment on her U.C.C. claim.

---

[1] We need not decide whether Beans sent notice of an adverse action to Scott since we have determined that Beans took no adverse action.

8

### 3. Beans's Counterclaim for Breach of Contract

Scott lastly moves for summary judgment on Beans's counterclaim for breach of contract. Scott points to 10 Pa. Code § 41.5(d), which provides in pertinent part that a licensee shall give a consumer notice of a sale and the deficiency claimed within fifteen days of the date of the sale and that "a licensee shall forfeit the right to a deficiency for failure to give the consumer the notices required in this section within the required time." Here, Beans failed to give Scott notice that it sold Scott's vehicle at auction or that it claimed a deficiency from that sale.

Beans argues that the counterclaim seeks to set-off damages recovered by plaintiff and that § 41.5(d) does not necessarily foreclose the recovery of a deficiency in the absence of notice.[2] We find this argument unpersuasive. The plain language of § 41.5(d) makes clear that notice must be given before Beans could attempt to collect the deficiency. Thus, we reject the holding of the court in Turner v. National Bank of Olyphant, CV-No. 87-1411, 1991 WL 328452 (Pa. D & C 4th, Mar. 5, 1991), which stated that the U.C.C.'s notice requirement did not foreclose the right to collect on a deficiency, but instead created a rebuttable presumption that the collateral was sold for its full value.[3] We will grant Scott's motion for summary judgment on Beans's counterclaim as Beans failed to provide the requisite notice of the sale and deficiency pursuant to 10 Pa. Code § 41.5(d).

---

[2] Beans also avers that 10 Pa. Code § 41.5(d) may not apply to car dealers since the legislation has been primarily applied to payday lenders and cash advance companies. See Cash American Net of Nevada, LLC. V. Comm. Dept. of Banking, 8 A.3d 282 (Pa. 2010). Given that the Act defines an installment sales contract, in part, as one "executed under the (now repealed) Motor Vehicle Sales Finance Act," 10 Pa. Code § 41.1, we think it is safe to say that the General Assembly intended for motor vehicle transactions to fall within the purview of this law.

[3] We mention this specific case because it is the basis of the defendants' argument on this claim.

B.  **Defendants Fred Beans and Timothy DeJesus's Motion for Summary Judgment**

Defendants Beans and DeJesus move for summary judgment on Scott's ECOA, UTPCP, and conversion claims, and we will grant their motion in its entirety.

1.  **ECOA Claim**

Beans first moves for summary judgment on Scott's ECOA claim.[4] The ECOA requires a creditor to provide notice to an applicant when the creditor takes an "adverse action" against the applicant. 15 U.S.C. § 1691(d)(1). This notice must provide an explanation for the creditor's "adverse action." Id. at § 1691(d)(2). Thus, in order to sustain her claim Scott must show that Beans (1) is a creditor as defined under the ECOA, (2) took an adverse action against her, and (3) provided notice with insufficient explanation as to why it took the adverse action. As we stated earlier, Beans is a creditor as defined under the ECOA. The ECOA defines an adverse action as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

Beans did none of these things. Scott and Beans entered into a RISC for Scott's purchase of a vehicle. The RISC stated that Scott was to make monthly payments of $350.65 and provide Beans with any documents requested to perfect its security interest. CAC reviewed the documents Scott provided to Beans and determined that they were inadequate to for their purposes. After CAC reassigned the contract back to Beans, defendant Timothy DeJesus

---

[4] Our previous discussion examines the issue in depth. Our analysis does not materially change, as the only disputed fact relevant to this claim is whether Beans would have continued honoring the agreement had Scott continued to make her monthly payments. But this fact is not material to the ECOA claim since we find that Beans's actions do not amount to an adverse action.

contacted Scott on behalf of Beans to request additional documentation in order to create a new RISC with the exact same terms so that Beans could then reassign it back to CAC. Even while it attempted to assign the contract to CAC, Beans continued to honor the terms of the transaction by allowing Scott to keep the car as long as she made her $350.65 monthly payment. When Beans did, in fact, repossess the car, it was because Scott failed to make her monthly payments, not because she was denied credit. We find that Beans's actions do not constitute an adverse action, and we will grant Beans's motion for summary judgment as to Scott's ECOA claim.

### 2. UTPCPL Claim

Beans and DeJesus also move for summary judgment on Scott's UTPCPL claim. The UTPCPL is Pennsylvania's consumer protection law, and it is designed to prevent unfair methods of competition and unfair or deceptive acts or practices in the course of trade and commerce. See, e.g., Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 151 (Pa. Super. Ct. 2012). The UTPCPL, while explicitly listing nearly two dozen forms of prohibited conduct, also contains a catchall provision that finds "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" to be an unfair method of competition or unfair or deceptive act or practice. 73 P.S. § 201-2(4)(xxi). This catchall provision seems to embody common law fraud, but our Court of Appeals has recently predicted that, if called to decide the issue, the Pennsylvania Supreme Court would not require a plaintiff to plead or prove all of the elements of common law fraud if she was alleging only deceptive conduct. Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 (3d Cir. 2013). Deceptive conduct requires knowledge of the falsity or misleading quality of one's conduct, whereas the traditional elements of common law fraud are (1) misrepresentation of a material fact, (2) scienter, (3) intent to induce action, (4) justifiable reliance, and (5) damage as a

proximate result. Chiles v. Ameriquest Mortg. Co., 551 F. Supp. 2d 393, 398 n.4 (E.D. Pa. 2008).

Here, there is no evidence that Beans or DeJesus knew of the falsity or misleading quality of its conduct -- specifically, that it did not inform Scott directly of her option to make her car payments directly to Beans. First, Scott was informed of that option by CAC, who sent a letter with that information to the address Scott had provided to Beans when she purchased the car. Beans also tried to inform her of this option, but mistakenly sent the letter to the wrong address. Second, even if Scott was never informed that she could make the car payments directly to Beans, there is no evidence that Beans or DeJesus knew of, or recklessly disregarded, the misleading quality of their communications with Scott. DeJesus worked with Scott for a month to try to get the documentation needed to reassign the RISC to CAC. It was not in Beans's interest to repossess the car from Scott and sell it for a loss, yet Scott alleges that Beans and DeJesus knowingly misled her into allowing Beans to do just that. Finally, Beans tried to inform Scott of this option, but mistakenly sent the letter to the wrong address. None of the evidence supports the notion that Beans or DeJesus knew of the falsity or misleading quality of its conduct, and thus Scott's UTPCPL claim fails. We will therefore grant the defendants' motion for summary judgment on this claim.

### 3.     Conversion Claim

Beans moves for summary judgment on Scott's conversion claim. Under Pennsylvania law, conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel…without the owner's consent and without lawful justification." Stevenson v. Economy Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1963); see also Baram v. Farugia, 606 F.2d 42, 43 (3d Cir. 1979). Scott's claim fails because she consented to the

repossession of the car and Beans was legally justified in repossessing the property, as Scott had failed to make her car payments for at least six months. We will therefore grant Beans's motion for summary judgment with respect to Scott's conversion claim.

## V. Conclusion

We find that Beans took no adverse action, did not engage in deceptive conduct and did not convert the vehicle, and thus we will grant its motion for summary judgment as to Scott's ECOA, UTPCPL, and conversion claims. We will grant plaintiff's motion on defendants' counterclaim, but deny plaintiff's motion with respect to her ECOA and UCC claims. An appropriate Order follows.

BY THE COURT:

/s/ Stewart Dalzell, J.
Stewart Dalzell, J.